# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTINE C.,[1] | ) |
|         Plaintiff, | ) No. 22 CV 7331 |
| v. | ) Magistrate Judge Young B. Kim |
| FRANK BISIGNANO, Commissioner of Social Security, | ) |
|         Defendant. | ) August 19, 2025 |

## MEMORANDUM OPINION and ORDER

Christine C. seeks disability insurance and social security income benefits asserting that she is disabled by degenerative changes of the lumbar spine and hips, osteoarthritis of the hand, neurocognitive disorder, and depression. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for benefits. For the following reasons, Christine's remand request is granted:

## Procedural History

Christine filed benefit applications in May 2020 claiming disability onset on January 31, 2020. (Administrative Record ("A.R.") 13, 208-21.) After her applications were denied initially and upon reconsideration at the administrative level, (id. at 66-101, 106-23), she sought and was granted a hearing before an Administrative Law Judge ("ALJ"), (id. at 144-45, 169-93). Christine appeared with her attorney at a

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Christine's first name and last initial in this opinion to protect her privacy to the extent possible.

December 2021 telephonic hearing at which she and a vocational expert testified. (Id. at 31-65.) The ALJ ruled in January 2022 that Christine is not disabled. (Id. at 13-26.) The Appeals Council denied Christine's request for review, (id. at 1-6), making the ALJ's decision the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Christine then filed this action seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 7).

## Analysis

Christine argues that the ALJ erred by: (1) failing to include the state agency reviewing psychologists' one-to-two step task limitation in the residual functional capacity ("RFC"), even though the ALJ deemed their opinions "persuasive"; (2) finding that she could frequently handle and finger with her right hand; and (3) improperly evaluating Christine's subjective symptom statements. (See generally R. 16, Pl.'s Br.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation

2

. . . 'sufficient to allow [the] reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley,* 97 F.4th 1050, 1054 (7th Cir. 2024) (citation omitted). Having considered the arguments and record under this standard, the court finds that remand is warranted.

**A.    Mental RFC**

Christine correctly argues that the ALJ needed to either include a one-to-two step task limitation in the RFC or explain why it was not warranted because she deemed the state agency reviewing psychologists' opinions "persuasive." (R. 16, Pl.'s Br. at 6-8); (A.R. 23). An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). In developing the RFC, the ALJ must incorporate a claimant's limitations, including those that are not severe, and may not simply dismiss a line of evidence that is contrary to the ruling. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020). In so doing, the ALJ must "say enough to enable review of whether [she] considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), providing a "logical bridge" between the evidence and her conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

At the initial level of administrative review, the reviewing psychologist found Christine moderately limited in her ability to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods.

3

(See A.R. 77-80, 95-98.) Accordingly, the reviewing psychologist opined that Christine could "remember work-like procedures, follow instructions, [and] maintain adequate pace, persistence and concentration to complete 1-2 step tasks." (Id. at 98.) The reviewing psychologist on reconsideration similarly opined that Christine was limited to "performing 1-2 step tasks and can concentrate sufficiently to complete these kinds of tasks." (Id. at 112-14, 121-22.)

The ALJ found the reviewing psychologists' opinions that Christine was limited to performing one-to-two step tasks "persuasive" because they "supported their opinions with reference to the record." (Id. at 23.) But when crafting her mental RFC, the ALJ limited Christine to "simple and repetitive tasks with no fast-paced production," and did not explain her apparent rejection of the one-to-two step task limitation. (See id. at 18.)

As this court has previously noted, the Seventh Circuit has not addressed whether there is an appreciable difference between a one-to-two step task limitation and a simple task limitation. *See Lissette B. v. Kijakazi*, No. 20 CV 7685, 2023 WL 2572431, at *3 (N.D. Ill. March 20, 2023). While there is no "consensus" among the district courts in this circuit, *Michael S. v. Saul*, No. 19 CV 4033, 2020 WL 4052903, at *4 n.5 (N.D. Ill. July 20, 2020), most have answered this question affirmatively, remanding where the ALJ did not articulate an apparent rejection of a one-to-two step task limitation in favor of a simple task limitation, *see, e.g., id.* at 4; *Rita R. v. Kijakazi*, No. 21 CV 5631, 2023 WL 2403139, at *3 (N.D. Ill. March 8, 2023); *Angelica R. v. Kijakazi*, No. 21 CV 50369, 2023 WL 1971647, at *3 (N.D. Ill. Jan. 6, 2023). This

4

is because a simple task restriction "may involve complexity beyond one-to-two step tasks," *Rita R.*, 2023 WL 2403139, at *4, including "jobs with a Reasoning Level of 2 or higher," *Kevin W. v. Kijakazi*, No. 20 CV 6557, 2023 WL 35178, at *4 (N.D. Ill. Jan. 4, 2023), whereas the one-to-two step task limitation has been interpreted as limiting claimants to jobs with a Reasoning Level of 1, *see Kevin W.*, 2023 WL 35178, at *4. But the ALJ determined that Christine could perform jobs requiring greater than a Reasoning Level of 2, including office helper, classifier, and sales attendant, (A.R. at 25, 62-63), even though these jobs may require more than one or two steps. As such, remand is needed to resolve the disconnect.

**B.** **Physical RFC**

Christine next asserts that the ALJ erred by not supporting with substantial evidence her finding that Christine could frequently handle and finger with her right hand. (R. 16, Pl.'s Br. at 8-10.) In so arguing, Christine points to the ALJ's alleged failure to comply with SSR 96-8p, 1996 WL 374184, at *7, which requires an RFC assessment to "include a narrative discussion describing how the evidence supports each conclusion, citing medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)," (R. 16, Pl.'s Br. at 9). The government responds that the ALJ reasonably considered the evidence of record and appropriately weighed that evidence. (R. 22, Govt.'s Mem. at 3.) The court agrees with the government on this point.

When explaining Christine's assessed hand restriction, the ALJ noted that the state agency reviewing physicians, whose opinions she deemed "generally

5

persuasive," limited Christine to "light work with frequent climbing, stooping, kneeling, crouching, and crawling," without restricting her handling or fingering. (A.R. 23.) But because February 2021 x-rays of Christine's right hand revealed "osteoarthritis of the right third and fourth proximal interphalangeal and right third distal interphalangeal joints," (id. at 20), and Christine complained of right hand pain, the ALJ limited Christine to frequent handling and fingering with her right hand, (id. at 18, 21).

The ALJ explained that a more stringent hand restriction was not required because Christine's physical examinations were "benign" and her treatment was limited to "anti-inflammatories and muscle relaxers." (Id. at 21 (citing id. at 456 (February 2021 family practice visit recording Christine's complaint of right hand pain without numbness or tingling, which Christine said was causing her to drop objects, but also noting that anti-inflammatory medications and muscle relaxers helped), 511 (August 2020 neurology visit showing normal muscle strength in upper and lower extremities), 527-29 (November 2019 neurology visit revealing normal muscle tone and strength in upper and lower extremities and normal sensation, coordination, and reflexes).)

Christine argues the ALJ's RFC cannot be supported by substantial evidence because the ALJ did not provide a direct citation for the medical finding that Christine had "full finger grasp and hand grip strength bilaterally." (R. 16, Pl.'s Br. at 10 (citing A.R. 22).) But earlier in her decision, the ALJ explained that during the January 2021 consultative examination, Christine's "[f]inger grasp and hand grasp

6

[were] unimpaired" and "[f]ine and gross manipulations were intact." (A.R. 21 (citing id. at 441-45).) Regardless, "[i]t is not enough to nitpick the ALJ's order." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). Instead, "[t]o warrant reversal, [the claimant] must show that the ALJ's determination was not supported by substantial evidence." *Id.* Christine has not done so here, and her challenge amounts to a request to reweigh the evidence, which the court cannot do. *See Deborah M.*, 994 F.3d at 788.

**C.     Symptom Assessment**

Finally, Christine argues that the ALJ's evaluation of her subjective symptom statements violates SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). (R. 16, Pl.'s Br. at 10-13.) An ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors, SSR 16-3p. That said, the court will not disturb a symptom evaluation that is logically based on specific findings and evidence. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). The ALJ's assessment here meets that standard. In concluding that Christine's statements concerning the "intensity, persistence and limiting effects" of her symptoms were "not entirely consistent" with the medical and other record evidence, the ALJ appropriately considered the objective evidence, along with Christine's self-reports, treatment, and daily activities. (See A.R. 21-22.)

Christine says the ALJ gave short shrift to her alleged need to lie down for four to five hours each day because of pain. (R. 16, Pl.'s Br. at 10.) But the ALJ sufficiently

7

explained that the medical evidence, minimal treatment, and daily activities did not support "a medical necessity to lie down." (A.R. 21-22.) The ALJ acknowledged Christine's reports of back, hip, and right hand pain, but also pointed to treatment records documenting "benign" or "normal" examinations, including normal gait, station, muscle tone, and strength, intact sensation, coordination, and reflexes, and full strength and range of motion in all extremities, except for limited range of motion in the left hip. (Id. at 21 (citing id. at 508-12 (August 2020 neurology record documenting no complaints of back pain, neck pain, joint pain, muscle pain, decreased range of motion, or trauma, along with normal gait and station, normal muscle tone and strength in upper and lower extremities, and intact sensation, coordination, and reflexes), 527-28 (November 2019 neurology record revealing normal gait and station, normal muscle tone and strength in upper and lower extremities, and intact sensation, coordination, and reflexes).)

The ALJ next addressed the consultative examiner's January 2021 examination finding that despite a "positive straight leg raise," Christine could bear weight, although she walked slowly without a cane. (Id. (citing id. at 443).) Still, Christine could "get on and off the exam table with mild difficulty and on and off the chair without difficulty." (Id.) Her treatment was "minimal" in that she took Tylenol and ibuprofen to help with her back and hip pain. (Id. at 21-22 (citing id. at 444).) And no other records show the recurrence of a positive straight leg raise. (Id. at 22.) Given this evidence, along with Christine's report to the consultative examiner that she can feed and dress herself and take her medications, (id. at 21 (citing id. at 441),

8

the ALJ found Christine's alleged need to lie down for four to five hours daily lacks record support.

Christine also criticizes the ALJ's symptom evaluation because the ALJ did not "specify which 'documented' daily activities [Christine] performed that detracted from her need to [lie] down." (R. 16, Pl.'s Br. at 11.) Earlier in her decision, the ALJ noted that Christine "is able to manage personal care, prepare meals, do light cleaning, shop, go out alone, and manage finances." (A.R. 18.) Although Christine suggests that the ALJ should have matched specific daily activities to an alleged need to lie down, (R. 16, Pl.'s Br. at 12), SSR 16-3p does not demand the level of specificity she suggests. In any event, the ALJ does not equate Christine's daily activities to an ability to sustain full-time, competitive work. But even assuming the ALJ failed to sufficiently explain every inconsistency between Christine's daily activities and allegations, an ALJ's subjective symptom assessment "need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 CV 6671, 2014 WL 1392974, at *10 (N.D. Ill. April 10, 2014) (citing *Schreiber v. Colvin*, 519 Fed. Appx. 951, 961 (7th Cir. 2013)). Having noted numerous inconsistencies between Christine's allegations and the record evidence, the ALJ's analysis clears that low bar here. *See Halsell v. Astrue*, 357 Fed. Appx. 717, 722 (7th Cir. 2009) ("Not all of the ALJ's reasons [for disbelieving a claimant] must be valid as long as *enough* of them are." (emphasis in original)).

9

## Conclusion

For the foregoing reasons, Christine's remand request is granted, and this matter is remanded for further proceedings consistent with this opinion.

**ENTER:**

**Young B. Kim**
**United States Magistrate**